No. 21-1312

In the

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

---

MICHAEL GIBSON MUIR,

*Plaintiff-Appellant,*

v.

UNITED STATES TRANSPORTATION SECURITY ADMINISTRATION;
DAVID P. PEKOSKE, ADMINISTRATOR;
L3HARRIS TECHNOLOGIES, INC.; ALLEGIANT AIR, LLC;
CHAD F. WOLF, SECRETARY,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Central District of Illinois, No. 20-cv-01280
The Honorable Joe Billy McDade

---

## JOINT BRIEF FOR THE APPELLEES

---

KEITH S. YAMAGUCHI
MARNIE A. HOLZ
*Attorneys*


KMA ZUCKERT LLC
*200 W. Madison St.,
16th Floor
Chicago, Illinois 60606
(312) 345-3000*

DOUGLAS J. QUIVEY
*Acting United States Attorney*
KIMBERLY A. KLEIN
*Asst. United States Attorney*


OFFICE OF THE
UNITED STATES ATTORNEY
*211 Fulton St., Suite 400
Peoria, Illinois 61602
(309) 671-7050*

MICHAEL G. MCQUILLEN
CHRISTOPHER J. RAISTRICK
RICHARD C. HARRIS
*Attorneys*


ADLER MURPHY &
MCQUILLEN LLP
*20 S. Clark Street, Ste. 2500
Chicago, Illinois 60603
(312) 345-0700*

## CORPORATE DISCLOSURE STATEMENTS

**ALLEGIANT AIR, LLC**

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, Defendant-Appellee Allegiant Air, LLC ("Allegiant") certifies that: (1) the law firm of KMA Zuckert LLC is the only firm whose members or associates have appeared for Allegiant in this case; (2) Allegiant is not a corporation, but its sole member, Allegiant Travel Company ("ATC"), is a corporation which is publicly traded on NASDAQ; and (3) Black Rock, Inc. owns approximately 10% of the stock of ATC. This certification has been revised from Allegiant's initial Appearance and Circuit Rule 26.1 Disclosure Statement filed on March 1, 2021 (CA7 R. 5 and 6) out of an abundance of caution based on Allegiant's status as a wholly owned subsidiary of a corporate parent.

Respectfully Submitted,
May 18, 2021.

KMA ZUCKERT LLC

/s/ KEITH S. YAMAGUCHI
Keith S. Yamaguchi
Marnie A. Holz
KMA Zuckert LLC

200 West Madison Street, 16th Floor
Chicago, Illinoi 60606
(312) 345-3000

*Attorneys for Defendant-Appellee,*
*ALLEGIANT AIR, LLC*

i

**L3Harris Technologies, Inc.**

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, Defendant-Appellee L3Harris Technologies, Inc. certifies that: (1) the law firm of Adler Murphy & McQuillen, LLP is the only firm whose partners or associates have appeared for L3Harris Technologies, Inc. in this case; (2) L3Harris Technologies, Inc. has no parent corporations; and (3) no publicly held companies own 10% or more of the stock of L3Harris Technologies, Inc.


Respectfully submitted,          */s/ Richard C. Harris__*
May 18, 2021.                     Richard C. Harris
                                 ADLER MURPHY & McQUILLEN LLP
                                 20 S. Clark Street, Suite 2500
                                 Chicago, Illinois 60603
                                 Telephone: (312) 345-0700
                                 Facsimile: (312) 345-9860
                                 rharris@amm-law.com


                                 *Attorneys for Defendant-Appellee,*
                                 *L3HARRIS TECHNOLOGIES, INC.*

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENTS ................................................. i

TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES ............................ vii

JURISDICTIONAL STATEMENT ............................................................ 1

    A. District Court Jurisdiction ...................................................... 1

    B. Timeliness of Appeal .......................................................... 4

    C. Prior or Related Appellate Proceedings ..................................... 4

ISSUES PRESENTED FOR REVIEW ........................................................ 6

STATEMENT OF THE CASE ................................................................ 7

    A. Prior Procedural History ..................................................... 7

    B. Plaintiff's FAC ................................................................. 9

        1. Arizona encounter ...................................................... 9

        2. Peoria encounter ....................................................... 10

        3. Plaintiff's causes of action against the TSA- Counts I-IV ........... 10

        4. Plaintiff's causes of action against Pekoske- Counts V-VIII ........ 10

        5. Plaintiff's causes of action against L3- Counts IX-XIV .............. 11

        6. Plaintiff's causes of action against Allegiant- Counts XV-XX ...... 11

        7. Plaintiff's claim under the Rehabilitation Act of 1973- Count XXI ...... 12

        8. Plaintiff's prayer for relief ........................................... 12

    C. The District Court's ruling ................................................... 12

1. Allegiant .................................................................... 13

2. Federal defendants................................................. 14

3. L3 ............................................................................. 15

D. Appeal ......................................................................... 16

SUMMARY OF THE ARGUMENT ......................................... 18

ARGUMENT ........................................................................... 21

I. Joint Arguments ............................................................. 21

A. The Court Should Strictly Enforce Plaintiff's Waivers ................................. 21

1. Any arguments raised before the District Court but not developed or supported by citations to pertinent authority in Plaintiff's appellate brief are waived on appeal ........................................... 21

2. Any factual assertions not raised before the District Court are not part of the record on appeal .......................................... 22

B. Plaintiff Cannot Assert New Claims on Appeal ............................................. 23

1. Section 1983 procedural waiver .................................. 23

2. Plaintiff failed to request leave to amend to name state actor, Peoria County ............................................................. 24

3. Plaintiff failed to request leave to amend to assert Section 1983 or Fourteenth Amendment violation claims................................ 27

4. The District Court considered new facts alleged in Plaintiff's briefing, and a liberal interpretation of the FAC under a pro se standard will not save Plaintiff .................................. 29

C. A Section 1983 Claim Against Defendants Is Substantively Untenable...... 29

1. Plaintiff fails to allege that defendants reached an understanding with Peoria County to deprive him of his constitutional rights ................................................................ 30

2. Plaintiff fails to allege that defendants were willful participants in any joint activity with Peoria County ...................................... 32

3. Plaintiff improperly alleges conduct taken under color of federal law .......................................................................... 34

4. Plaintiff has no viable federal constitutional claims ................................. 36

5. Any Section 1983 claim is simply not plausible ......................................... 40

II. The Federal Defendants' Individual Arguments ................................................. 40

A. Any Petition to Challenge the TSA Checkpoint Screening Procedure is Untimely................................................................................. 40

B. Plaintiff's Attempt to Construe His Appeal as a Petition Challenging TSA's Checkpoint Security Procedures Embedded in His Opening Brief Is Improper........................................................................ 42

III. L3's Individual Arguments: The District Court's Dismissal of L3 Should be Affirmed on the Merits................................................................ 44

1. Rule 12(b)(6) .......................................................................... 45

2. The District Court correctly ruled that Plaintiff cannot state a cause of action against L3 for ordinary negligence ............................................. 45

3. NIED and IIED ........................................................................ 47

4. Plaintiff's medical condition was not "misidentified" ............................. 49

5. The SAFETY Act ...................................................................... 52

6. Res judicata/statute of limitations ............................................... 53

v

IV. Allegiant's Individual Argument: The Collection and Remittance of a
9/11 Security Fee is Neither Voluntary Nor Conspiratorial Conduct .............. 56

CONCLUSION............................................................................................................. 62

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

Page(s)

**Constitution**

U.S. Const. amend. IV ...................................................................... 2

U.S. Const. amend. V ....................................................................... 2

U.S. Const. amend. XIV .................................................................... 2

**Cases**

*Alarm Detection Systems v. Village of Schaumburg*,
  930 F.3d 812 (7th Cir. 2019)............................................... 34, 36

*Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008) ..................... 21-22

*Arrigo v. Link*, 836 F.3d 787 (7th Cir. 2016) ........................................ 54, 55

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................... 45

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) .......................................................... 1, 10, 21

*Blitz v. Napolitano*, 700 F.3d 733 (4th Cir. 2012).................................... 42

*Brown v. Delta Airlines, Inc*, Nos. CIV-03-871-L, CIV-03-901-L,
  CIV-03-943-L, 2004 WL 5041257 (W.D. Okla. Oct. 8, 2004) ................. 60

*Builders NAB LLC v. Federal Deposit Insurance Corporation*,
  922 F.3d 775 (7th Cir. 2019)...................................................... 28

*Case v. Milewski*, 327 F.3d 564 (7th Cir. 2003) ...................................... 35, 36

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)..................................... 15

*Chicago Firefighters Local 2 v. City of Chicago*, 249 F.3d 649 (7th Cir. 2001) .............. 39

*Collins v. Village of Palatine*, 875 F.3d 839 (7th Cir. 2017) .......................... 54

*Cooney v. Casady*, 735 F.3d 514 (7th Cir. 2013)....................................... 32

*Corbett v. Transportation Security Administration*,
   767 F.3d 1171 (11th Cir. 2014)..................................................................38

*Corbett v. Transportation Security Administration*,
   930 F.3d 1225 (11th Cir. 2019)..............................................................50, 51

*Corbett v. United States*, 458 F. App'x 866 (11th Cir. 2012)...................42, 43

*Davis v. Passman*, 442 U.S. 228 (1979) ....................................................1, 11

*Diabate v. Delta Airline*, 13-CV-0918, 2014 WL 48001 (D. Minn. Jan. 7, 2014) .........60

*Doe v. Coe*, 2019 IL 123521, 135 N.E.3d 1 (Ill. 2019) .....................................45

*Donald v. Cook County Sheriff's Department*, 95 F.3d 548 (7th Cir. 1996) ............25, 26

*Duncan v. City of Wis. Dep't of Health and Family Servs.*,
   166 F.3d 930 (7th Cir. 1999)................................................................33, 44

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012) .........................................53

*Farrar v. McNesby*, 639 F. App'x 903 (3d Cir. 2016) ..................................58

*Fields v. City of Chicago*, 981 F.3d 534 (7th Cir. 2020) ...............................51

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012).............................52

*Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir. 2006)....................................42

*Gonzalez-Koeneke v. West*, 791 F.3d 801 (7th Cir. 2015) .........................23, 28

*Griswold v. Connecticut*, 381 U.S. 479 (1965)...............................................2

*Guise v. BWM Mortgage, LLC*, 377 F.3d 795 (7th Cir. 2004) ........................23

*Harris v. City of Houston*, 151 F.3d 186 (5th Cir. 1998)...........................27-28

*Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329 (7th Cir. 2018)..........24, 28

*Hill v. Vannatta*, 123 F. App'x 723 (7th Cir. 2005) ...................................22-23

*Hogan v. Northwest Airlines, Inc.*, No. 11-cv-14888,
   2013 WL 607852 n.7 (S.D. Mich. Feb. 19, 2013) ......................................61

*Holman v. Indiana*, 211 F.3d 399 (7th Cir. 2000) .......................................23

*Honaker v. Smith*, 256 F.3d 477 (7th Cir. 2001) ............................................................ 35

*Hoskins v. Poelstra*, 320 F.3d 761 (7th Cir. 2003) ....................................................... 32

*Katz-Crank v. Haskett*, 843 F.3d 641 (7th Cir. 2016) ................................................. 36

*Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951 (7th Cir. 1988) ............................... 4

*Kaye v. Southwest Airlines Co.*, No. Civ.A. 3:05CV0450-D,
    2005 WL 2074327 (N.D. Tex. Aug. 29, 2005) ........................................................ 60

*Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698 (7th Cir. 2009) .................................... 47

*Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019) .................................................. 45

*Lexion Med., LLC v. Northgate Techs., Inc.*, 618 F. Supp. 2d 896 (N.D. Ill. 2009) ...... 21

*Lott v. Not-For-Profit Hospital Corp.*, 319 F. Supp. 3d 277 (D.D.C. 2018) ................. 50

*Messman v. Helmke*, 133 F.3d 1042 (7th Cir. 1998) ..................................................... 34

*Muhammad v. Oliver*, 547 F.3d 874 (7th Cir. 2008) ..................................................... 54

*Narvaez v. American Airlines, Inc.*, No. 09-CIV-6397,
    2010 WL 5072114 (S.D.N.Y. Dec. 13, 2010) ...................................................... 61

*Neitzke v. Williams*, 490 U.S. 319 (1989) ..................................................................... 53

*Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127 (7th Cir. 1986)......................... 23

*Pacific Mut. Life Ins. Co. v. American Nat. Bank and Trust Co. of Chicago*,
    642 F. Supp. 163 (N.D. Ill. 1986) ............................................................................ 4

*Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017 (7th Cir. 2013) ......................... 52

*Roberts v. Napolitano*, 798 F. Supp. 2d 7 (D.D.C. 2011) ............................................ 41

*Ruskai v. Pistole*, 775 F.3d 61 (1st Cir. 2014) ........................................... 37, 38, 43, 49

*Ryan v. Napier*, 245 Ariz. 54, 425 P.3d 230 (Ariz. 2018) ............................................ 45

*Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, 77 N.E.3d 50 (Ill. 2016)....... 48

*Skolnick v. F.A.A.*, F. App'x 368 (9th Cir. 2005) ........................................................ 41

*Stagman v. Ryan*, 176 F.3d 986 (7th Cir. 1999) ........................................................30, 31

*Taylor v. Huerta*, 856 F.3d 1089 (D.C. Cir. 2017) ........................................................ 41

*Teumer v. General Motors Corp.*, 34 F.3d 542 (7th Cir. 1994)................................24, 27

*United States v. Aukai*, 497 F.3d 955 (9th Cir. 2007)................................................31, 38

*United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991) ........................................ 22

*United States v. McDonald*, 100 F.3d 1320 (7th Cir. 1996) ........................................ 38

*Wheeler v. Hronopoulos*, 891 F.3d 1072 (7th Cir. 2018) ..........................................28-29

*Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003)........................................................ 30

*Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago,*
    357 F.3d 677 (7th Cir. 2004)........................................................................ 23

## Statutes

6 U.S.C. § 442 ................................................................................................ 51

28 U.S.C. § 1331 ............................................................................................... 1

28 U.S.C. § 1332 ............................................................................................1, 3

28 U.S.C. § 1346 ............................................................................................... 1

28 U.S.C. § 1367 ............................................................................................... 3

28 U.S.C. § 1442 ............................................................................................. 60

28 U.S.C. § 2674 ............................................................................................... 1

29 U.S.C. § 794 ............................................................................................2, 12

42 U.S.C. § 1983 .......................................................................................passim

49 U.S.C. § 40103 ............................................................................................. 2

49 U.S.C. § 44901 ..............................................................................2, 46, 49, 50

49 U.S.C. § 44901 (2018) ........................................................................49

49 U.S.C. § 46110 ...................................................................40, 41, 42, 43

## Other Authorities

Fed. R. App. P. 4.........................................................................................4

Fed. R. App. P. 24.......................................................................................4

Fed. R. Civ. P. 7.......................................................................................23

Fed R. Civ. P. 15.................................................................................17, 23

Fed. R. Civ. P. 41....................................................................................4, 8

## Regulations

49 C.F.R. § 1510.9 ...............................................................................57-58

49 C.F.R. § 1510.13 .......................................................................57, 58, 59

49 C.F.R. § 1540.107 .....................................................................46, 49, 50

49 C.F.R. § 1540.107 (2018)....................................................................49

## JURISDICTIONAL STATEMENT[1]

The jurisdictional statement of Plaintiff Michael Gibson Muir ("Plaintiff") was neither complete nor correct.

### A. District Court Jurisdiction

Jurisdiction existed in the United States District Court for the Central District of Illinois (the "District Court") pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1332(a)(1) (diversity jurisdiction), and 1346(b)(1) (jurisdiction based on United States being a defendant). With respect to jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b), Plaintiff's First Amended Complaint (the "FAC") asserted negligence and negligent infliction of emotional distress claims against Defendant-Appellee the Transportation Security Administration ("TSA") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, on the ground that the TSA failed to give Plaintiff fair notice of the security screening process and failed to sufficiently warn him of that process; claims under the *Ziglar v. Abbasi* standard based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and *Davis v. Passman*, 442 U.S. 228 (1979), against Defendant-Appellee David P. Pekoske ("Pekoske") for alleged violations

---

[1] We use the following abbreviations for record citations: "R." followed by a number refers to a document in the district court record; "D.E." followed by a date refers to a docket entry in the district court record; and "CA7 R." followed by a number refers to a document in this Court's record of the current appeal.

of Plaintiff's Fourth and Fifth Amendment constitutional rights in the course of

the TSA screening encounters; and a claim under the Rehabilitation Act, 29

U.S.C. § 794, against TSA, Pekoske, and Defendant-Appellee Chad F. Wolf

("Wolf") (collectively the "Federal Defendants") based on alleged discrimination

against Plaintiff based on his hidden physical congenital disorder. The FAC

alleged no claims based on 42 U.S.C. § 1983 or on violations of Plaintiff's

Fourteenth Amendment rights by the Appellees, and Plaintiff did not raise these

issues in briefings submitted to the District Court as to any party below.[2]

---

[2] Contrary to the FAC, Plaintiff incorrectly claims in his Docketing Statement, CA7 R. 4, that "[j]urisdiction is based on the existence of a federal question regarding: 42 U.S.C. § 1983, 29 U.S.C. § 794, 49 U.S.C. § 40103, 49 U.S.C. § 44901, Amendments IV, V, and XIV to the United States Constitution and the constitutional right to privacy found in *Griswold v. Connecticut*, 381 U.S. 479 (1965)." CA7 R. 4. Appellees filed a Joint Docketing Statement to correct and complete Plaintiff's Docketing Statement, but inadvertently misstated that federal question jurisdiction was based on, *inter alia*, "claims under 42 U.S.C. § 1983 against Defendant-Appellee David P. Pekoske for violations of Plaintiff's Fourth and Fifth Amendment constitutional rights in the course of the TSA screening encounters[.]" CA7 R. 12, at 3. A Section 1983 claim against David P. Pekoske is a legal impossibility as Mr. Pekoske was sued in his capacity as a Federal Official. Appellees apologize for any confusion caused by that inadvertent misstatement but note that the error does not eliminate the other underlying bases for federal question subject matter jurisdiction in the District Court.

Additionally, with regard to 28 U.S.C. § 1332(a)(1), the District Court had original subject matter jurisdiction because there was complete diversity of citizenship and the amount in controversy exceeds $75,000. As to citizenship when the suit was filed (and now), Defendant-Appellee L3Harris Technologies, Inc. ("L3") was a corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of Florida; Defendant-Appellee Allegiant Air, LLC ("Allegiant") was a Nevada limited-liability company—its sole member, Allegiant Travel Company, existed as a corporation incorporated under the laws of the State of Nevada with its principal place of business in the State of Nevada; and Plaintiff was a citizen of either the State of Illinois or the State of Arizona.[3] As to the amount in controversy, it exceeds $75,000 as the FAC seeks $500,000,000 in compensatory damages against L3 and $200,000,000 in compensatory damages against Allegiant. Accordingly, the District Court had subject matter jurisdiction over Plaintiff's tort claims against L3 and Allegiant because complete diversity exists and the amount in controversy exceeds the jurisdictional limits. Alternatively, the District Court had subject matter jurisdiction over the tort claims asserted against L3 and Allegiant pursuant to its supplemental jurisdiction in accordance with 28 U.S.C. § 1367.

---

[3] Plaintiff's Docketing Statement stated only that his legal residence, but not his

3

## B. Timeliness of Appeal

The judgment for which Plaintiff seeks review was entered January 25, 2021, R. 47, and Plaintiff filed his Notice of Appeal in the District Court on February 19, 2021, R. 48. *See also* FED. R. APP. P. 4(a)(1)(B). After the District Court denied Plaintiff's FED. R. APP. P. 24 Motion for Permission to Appeal *In Forma Pauperis* on March 11, 2021, and certified that the appeal was taken in bad faith, R. 54, Plaintiff perfected his appeal by paying the filing fee on March 19, 2021.

## C. Prior or Related Appellate Proceedings

There are no prior appellate proceedings related to this matter. However, there was prior litigation between Plaintiff and L3 that is arguably related to this matter. Plaintiff previously filed a lawsuit in the United States District Court for the District of Arizona ("District of Arizona"), Case No. 2:19-cv-05887, against L3 but Plaintiff voluntarily dismissed that action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on August 6, 2020, and it was terminated by the District of Arizona on August 14, 2020. L3 argued below in the District Court that an adverse ruling

---

citizenship, is Bloomington, Illinois. CA7 R. 4; *see also* R. 12, at ¶ 10. His Form 4 Affidavit Accompanying Motion for Permission to Appeal *In Forma Pauperis* discloses assets and connections with only Illinois and Arizona. *See* R. 53-1.

Further, subject matter jurisdiction over the Federal Defendants-Appellees was predicated on the independent basis of federal question, and the citizenship of the Federal Defendants-Appellees need not be considered. *See Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 958-59 (7th Cir. 1988); *see also Pacific Mut. Life Ins. Co. v. American Nat. Bank and Trust Co. of Chicago*, 642 F. Supp. 163, 167 (N.D. Ill. 1986).

4

in the Arizona litigation had a preclusive effect on Plaintiff's claims against L3 in

the present matter.

## ISSUES PRESENTED FOR REVIEW

The issue presented on appeal is whether the District Court erred in dismissing the FAC, and more specifically:

I.    Whether Plaintiff has waived any arguments raised before the District Court that are not developed or supported by citations to pertinent authority in his opening brief and is further precluded from introducing factual assertions that were not part of the record before the District Court?

II.    Whether Plaintiff is barred from asserting new claims on appeal?

A.    Whether FED. R. CIV. P. 15(a)(2) required Plaintiff to seek written consent of the TSA, Pekoske, Wolf, L3 and Allegiant (collectively "Defendants") or leave of court to amend his complaint?

B.    Whether the District Court erred by not allowing an amendment that was never requested, which would have added a claim that was never asserted and an additional state-actor defendant who was neither named nor served?

III.   Whether a claim pursuant to 42 U.S.C. § 1983 is substantively untenable even if allowed?

IV.   Whether the Defendants' individual defenses otherwise warranted dismissal of the FAC?

## STATEMENT OF THE CASE

This lawsuit involves two similar airport passenger screening encounters. Plaintiff claims his rights were violated when he was screened before boarding Allegiant flights on August 9, 2018, at the Phoenix-Mesa Gateway Airport ("Arizona encounter"), and again on August 12, 2018, at the General Wayne A. Downing Peoria International Airport ("Peoria encounter") R. 12 at 2. In both instances, Plaintiff generally alleges that screening technology manufactured by L3 identified an anomaly near his groin. This led the TSA to conduct a physical pat-down to resolve any potential threats. *Id.* at 6-11. According to Plaintiff, the anomaly identified by the screening technology was his "completely beneath the skin hernia at his right groin." *Id.* at 11.

### A. Prior Procedural History

Plaintiff's allegations were the subject of his prior lawsuit against L3 in the District of Arizona.[4] Plaintiff's Arizona suit was based solely on the Arizona encounter. *See* R. 37-1. L3 moved to dismiss Plaintiff's first amended complaint in the District of Arizona for failure to state a claim. On June 24, 2020, while L3's motion to dismiss was pending, Plaintiff attempted to file his second amended

---

[4] In its underlying Order of Dismissal, the District Court took judicial notice of the electronic docket in *Plaintiff v. L3Harris Tech., Inc.*, No. 2:19-cv-05887 (D. Ariz.). R. 46 at 34. Certain pleadings and Orders from the Arizona District Court were also made part of the record below.

complaint in the District of Arizona. *See* R. 37-2. The second amended complaint purported to add the TSA and Pekoske as defendants. It also purported to add new allegations and claims based on the Peoria encounter. *Id*.

However, on July 23, 2020, the District of Arizona entered an Order striking Plaintiff's second amended complaint and denying him leave to file the same. *See* R. 37-3. The District of Arizona held that Plaintiff's new claims "clearly are without merit" and Plaintiff had "provided no basis for adding defendants and expanding the scope and nature of his claims." Accordingly, Plaintiff was ordered to file a response to L3's motion to dismiss his first amended complaint by August 7, 2020. *Id*. at 3.

On July 31, 2020, while his claims based on the Arizona encounter were still pending in the District of Arizona, Plaintiff filed his initial complaint in the Central District of Illinois. He named L3, the TSA, and Pekoske as defendants, and his claims were based solely on the Peoria encounter. R. 1.

On August 4, 2020, Plaintiff filed a "Notice of Voluntary Dismissal Pursuant to FED. R.CIV. P. 41(a)(1)(A)(i)" in the District of Arizona. *See* R. 37-4.

On September 4, 2020, Plaintiff filed his FAC—the operative complaint in this appeal—in the District Court. He added his claims based on the Arizona encounter and named Allegiant and Wolf as additional defendants. R. 12.

8

**B. Plaintiff's FAC**

**1. Arizona encounter**

Plaintiff alleged the TSA and Allegiant failed to give him "fair notice of the security screening process" before he arrived at the Phoenix-Mesa Gateway Airport on August 9, 2018. R. 12 at 5. He further claimed that, upon his arrival, L3's airport passenger screening technology "returned a false threat alarm" that "misidentified the uncontrollable symptom manifestation" of his "hidden, beneath the skin physical disorder at his right groin as a foreign material object on the surface of his skin at his right groin." *Id*. at 6. Based on the "false threat alarm," the TSA informed Plaintiff that "a physical screening of his right groin was required" and "coerced" him to "act against his will in order to secure his lawful release from TSA." R. 12 at 7.

Plaintiff did not allege any specific details of what took place during the physical pat-down in Arizona. He claimed, however, that he was entitled to notice that (1) "he would be forced to submit" to a physical pat-down, and (2) "there were no exceptions" to the physical pat-down requirement, "even for serious medical emergencies." *Id*. at 5.

9

### 2. Peoria encounter

For the most part, Plaintiff's allegations regarding the Peoria encounter on August 12, 2018 tracked his allegations regarding the Arizona encounter. *Id*. at 8-11. Plaintiff additionally alleged that during the Peoria encounter, he offered to show his hernia to TSA personnel, which he believed was a "reasonable alternative to being physically touched at his right groin because it would have accomplished the goal of completely screening for weapons, explosives, incendiary items and other contraband or security threats." R. 12 at 11.

### 3. Plaintiff's causes of action against the TSA – Counts I-IV

In Counts I-IV, Plaintiff generally claimed the TSA violated his constitutional (federal and state) rights to privacy and due process, as well as his right to be free from unlawful searches and seizures. He claimed the TSA failed to give him "fair notice" of the security screening process or warn him of a "known danger" created by the TSA, which Plaintiff "could not unilaterally avoid." Counts I and II are for negligence and negligent emotional stress under Arizona law; Counts III and IV are for the same causes of action under Illinois law. R. 12 at 13-15.

### 4. Plaintiff's causes of action against Pekoske – Counts V-VIII

In Count V, Plaintiff claimed Pekoske violated his constitutional right to be free from unreasonable searches under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In Count VI, Plaintiff contended

10

Pekoske violated his constitutional right to due process under *Davis v. Passman*, 442 U.S. 228 (1979). Counts VII and VIII are duplicative of Counts V and VI and restate the same allegations. In each Count, Plaintiff claimed Pekoske committed a "Constitutional tort." R. 12 at 15-17.

### 5. Plaintiff's causes of action against L3 – Counts IX-XIV

In each of the counts brought against L3, Plaintiff claimed L3 violated his constitutional (federal and state) rights to privacy and due process, and his right to be free from unlawful searches and seizures. Plaintiff alleged that L3 failed to address the "known problems" with its airport security screening technology and should have known it could violate Plaintiff's rights. Based on these alleged violations, Plaintiff claimed L3 committed (1) negligence, (2) negligent infliction of emotional distress ("NIED"), and (3) intentional infliction of emotional distress ("IIED"). Each of these claims was brought once under Arizona law and once under Illinois law. R. 12 at 17-20.

### 6. Plaintiff's causes of action against Allegiant – Counts XV-XX

The six counts brought against Allegiant tracked the six Counts brought against L3. There were claims for negligence, NIED, and IIED. Each claim was brought once under Arizona law and once under Illinois law. Plaintiff claimed Allegiant failed to give him "fair notice" of the security screening process and

11

further failed to warn him that his constitutional rights could be violated. R. 12 at 20-24.

### 7. Plaintiff's claim under the Rehabilitation Act of 1973 – Count XXI

Plaintiff's final count was brought against the TSA, Pekoske, and Wolf. Plaintiff claimed these Defendants discriminated against him in violation of Section 504 of the Rehabilitation Act of 1973 (codified at 29 U.S.C. § 794). Plaintiff alleged that he is a "qualified individual with a disability" due to his "congenital birth defect." He claimed his "private marital healthcare choice regarding his physical disability is a protected factor impermissible to discrimination and the sole reason [he] was singled out and discriminated against." R. 12 at 24-26.

### 8. Plaintiff's prayer for relief

Plaintiff requested a total of $1.4 billion in damages, plus punitive damages in an amount to be determined by a jury, and a declaration that the Defendants violated his constitutional rights. Plaintiff also sought various forms of injunctive relief, including the return or destruction of his "passenger screening data images." R. 12 at 26-28.

### C. The District Court's ruling

Each of the Defendants moved to dismiss the FAC for, among other reasons, failure to state a claim. On January 22, 2021, the District Court entered an order and opinion granting all Defendants' motions to dismiss with prejudice. R. 46 at

40. On January 25, 2021, the District Court entered judgment in favor of all

Defendants and dismissed all counts with prejudice. R. 47. The following is a

summary of the District Court's rulings with respect to each individual

Defendant that are relevant to the issues raised in this appeal.

### 1. Allegiant

With regard to Allegiant's motion to dismiss, the District Court agreed with

Allegiant's argument that Plaintiff could not state a claim for negligence, NIED,

or IIED based on the Peoria occurrence.[5] The District Court ruled that Allegiant

had no duty to warn Plaintiff about the TSA's screening procedures, because it is

common knowledge that passengers must undergo TSA screening prior to

boarding a flight, and "American jurisprudence generally imposes knowledge of

the law on all litigants." R. 46 at 19. Moreover, even if Allegiant owed such a

duty to warn, it did so through its Contract of Carriage, which was attached as

an exhibit to Allegiant's motion and of which the District Court took judicial

notice. *Id*. at 19-20. Regarding Plaintiff's claim against Allegiant for IIED, the

District Court ruled that Plaintiff failed to allege extreme or outrageous conduct,

and Allegiant "took no part" in the TSA screening. *Id*. at 22-23. The District Court

---

[5] The District Court found that the claims based solely on the Arizona encounter did not relate back to the original complaint and entered judgment on those claims in favor of Allegiant. R. 46 at 14-17.

also noted that although Plaintiff claimed that Allegiant's tortious conduct

violated his constitutional rights, he failed to allege in his FAC or his response

brief any action by Allegiant that could be fairly attributed to a state government

or to the federal government. *Id.* at 7 n.3.

### 2. Federal Defendants

With regard to the Federal Defendants' motion to dismiss, the District Court

ruled that Plaintiff's claims of constitutional violations and violations of the

Rehabilitation Act are challenges to the TSA's Standard Operating Procedures,

such that they must be brought in the Court of Appeals in the first instance. R. 46

at 28. The District Court found that the only claims properly brought against the

Federal Defendants in District Court were for negligence and NIED, which must

be considered under the FTCA. *Id.* at 29-30. The District Court noted, however,

that the only proper defendant in an FTCA claim is the United States – whom

Plaintiff did not sue. *Id.* at 30. In responding to the Federal Defendants' argument

on that point, Plaintiff cited the principle that *pro se* pleadings should be liberally

construed and argued that the United States should be substituted as the correct

party. *Id.* at 31. The District Court disagreed with Plaintiff's position, holding in

relevant part:

> Though *pro se* complaints are indeed liberally construed, liberal
> construction does not include *sua sponte* or unilateral substitution
> of parties against whom Plaintiff has not elected to sue; Plaintiff is

14

master of his complaint, *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).

*Id.*

In addition to finding that Plaintiff's FTCA claims were procedurally improper, the District Court also held that they were meritless. Drawing from Plaintiff's allegations making it clear that his medical condition was hidden and private, the District Court found that the TSA lacked knowledge that the screening process would be dangerous to Plaintiff; thus, no duty to warn could attach. Further, the District Court concluded that once Plaintiff informed the TSA of his medical condition, he received adequate warnings that a physical pat-down screening was required. *Id.* at 31-32.

### 3. L3

Turning to L3's arguments in its motion to dismiss, the District Court agreed with L3 that the FAC was devoid of any allegations establishing a duty, and his Response to L3's motion to dismiss "does little to explain his theory." R. 46 at 38. Further, while the District Court noted Plaintiff asserted that L3 was involved in a "common enterprise" with the other Defendants, it found that Plaintiff alleged no facts indicating the existence of such a relationship. In addition, because there was nothing to show that L3 had any knowledge of Plaintiff's medical condition, the District Court found no basis to impose a duty on L3 and dismissed Plaintiff's claims against L3 for negligence and NIED. *Id.* at 38-39. The District

Court similarly dismissed Plaintiff's IIED claim against L3 based on the lack of any direct interaction between the parties. *Id*. at 39.[6]

**D. Appeal**

Plaintiff timely filed a notice of appeal on February 19, 2021. R. 48.

On March 9, 2021, Plaintiff filed a "Motion for Permission to Appeal In Forma Pauperis." R. 53. Plaintiff stated his intention to seek leave from the Court of Appeals to amend his FAC to name "Peoria County" as a defendant and "assert his new legal theory of state-attributable action and new valid § 1983 legal cause of action against all defendants." *Id*. at 2. In his supporting affidavit, Plaintiff asserted that the deprivation of his liberty was "fairly attributable to the Peoria County Sheriff's Office," which he described as "a state actor with sole arrest powers walking hand in hand with TSA agents and L3's [Artificial Intelligence] to enforce federal law at the TSA checkpoint)". R. 53-1.

On March 11, 2021, the District Court denied Plaintiff's motion for leave to appeal *in forma pauperis* and held that Plaintiff's appeal was not taken in good faith. R. 54. Drawing from the language quoted in the paragraph above, the District Court held in pertinent part:

---

[6] L3 notes that the District Court, for reasons discussed more fully below, declined to rule on certain additional arguments raised by L3 in its motion to dismiss.. Nevertheless, L3 will reassert these arguments in the "Independent Argument" section of this Joint Brief as alternative grounds to affirm the District Court's dismissal of L3.

This explanation suggests Plaintiff should have been given an opportunity to amend his First Amended Complaint to add yet another defendant and claim(s). Such would exceed any leave to amend granted in connection with a dismissal under Rule 12(b)(6), in which case, the Court would grant leave to amend only those claims analyzed and dismissed. Leave to amend on dismissal does not equal a *carte blanche* opportunity to raise entirely new claims against new parties. To add a defendant and claim(s), Plaintiff was required to obtain leave to amend under Federal Rule of Civil Procedure 15(a)(2), a request never posed to the Court and seemingly not consented to by Defendants.

*Id*. at 3. The District Court concluded by holding: "Plaintiff's claim [that] the Court erred by failing to grant relief he never requested is simply not a valid basis for an appeal." *Id*. at 4.

Plaintiff later perfected his appeal by paying the filing fee on March 19, 2021. D.E. March 19, 2021; CA7 R.13.

## SUMMARY OF THE ARGUMENT

Despite the District Court's admonishment to Plaintiff in denying his motion for leave to appeal *in forma pauperis*, Plaintiff's appeal is based solely on his new theory of § 1983 liability. The District Court's relevant ruling succinctly explains why this appeal has no merit. R. 54.

Although the District Court liberally construed the FAC, considered additional facts raised in response to the motions to dismiss, and hunted through the pleadings to find buried truffles that it then addressed on the merits, Plaintiff essentially ignores the District Court's rulings on the merits. Rather, Plaintiff argues that the District Court erred because it did not allow a motion to amend that was never made in order to add a new state actor defendant and cause of action that were never mentioned. The implication is that the District Court should have assisted Plaintiff on account of his *pro se* status by directing him to restate his claim under § 1983 and name an additional defendant. By challenging what the District Court purportedly did not do instead of what it did do, Plaintiff has waived the opportunity to challenge the District Court's substantive rulings. Moreover, Plaintiff's claimed error goes well beyond any reasonable duty owed by courts to pro se litigants, as it required the District Court to effectively create a § 1983 claim out of thin air.

18

Even assuming *arguendo* that the District Court could have divined a § 1983 claim from the tea leaves of the FAC, it would have been an exercise in futility. Plaintiff did not plead any facts from which it could be reasonably inferred that the Defendants reached an understanding with a state actor to deprive him of his constitutional rights or that the Defendants were willful participants in joint activity with the state actor. To the contrary, the FAC alleged that federal law was enforced during his encounters, indicating that any actions were taken under color of federal law rather than state law. A § 1983 claim would also fail due to the lack of any viable federal constitutional claim upon which such a claim could be predicated. Thus, a § 1983 claim based on Plaintiff's allegations is simply untenable.

The FAC essentially made an untimely challenge to the TSA Checkpoint Screening Procedure in the wrong forum and alleged no personal involvement by the individual federal defendant. The FAC contained no allegation of any legal duty owed to Plaintiff by L3, much less a breach of that duty or causation of his alleged injury. Plaintiff likewise alleged no personal conduct on the part of Allegiant other than selling him a ticket, collecting a 9/11 Security Fee, and remitting it to the Department of Homeland Security in compliance with federal regulations; the record is devoid of any suggestion of Allegiant's participation in his security screening at the TSA Checkpoint.

For all these reasons, the District Court's dismissal of the FAC should be affirmed.

## ARGUMENT

### I. Joint Arguments

#### A. The Court Should Strictly Enforce Plaintiff's Waivers

##### 1. Any arguments raised before the district court but not developed or supported by citations to pertinent authority in plaintiff's appellate brief are waived on appeal

Before the District Court, Plaintiff alleged 21 counts against the Defendants, including multiple counts of negligence, NIEDp, and IIED under both Arizona and Illinois law; Fourth Amendment claims pursuant to *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971); privacy claims; Due Process claims; and a claim under the Rehabilitation Act, as well as requests for declaratory and injunctive relief. Although his Notice of Appeal purported to appeal the District Court's January 22, 2021, Order and Opinion and January 25, 2021, Judgment in favor of all Defendants, Plaintiff's initial appellate brief raises essentially one claim – that his lawsuit should not have been dismissed because he should have been allowed to amend his FAC to add a new party and assert a § 1983 claim that he never sought leave to file.

Notably, "an issue that falls within the scope of the judgment appealed from that is not raised by the appellant in its opening brief on appeal is necessarily waived." *Lexion Med., LLC v. Northgate Techs., Inc.*, 618 F. Supp. 2d 896, 902 (N.D. Ill. 2009), *aff'd*, 641 F.3d 1352 (Fed. Cir. 2011) (*citing Amado v. Microsoft Corp.*, 517

21

F.3d 1353, 1360 (Fed. Cir. 2008)). Accordingly, in choosing to raise only one new claim of error on appeal, Plaintiff has waived any claim of error with respect to the 21 claims dismissed by the District Court, and they merit no further consideration on appeal.

Plaintiff has also waived his challenge to the merits of the lower court's order by failing to cite pertinent legal authority establishing that any of the District Court's opinion dismissing the claims against all named defendants was incorrect. Because Plaintiff has not cited pertinent legal authority in support of his claim that the District Court erred, the argument is waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("arguments that are unsupported by pertinent authority . . . are waived").

### 2. Any factual assertions not raised before the district court are not part of the record on appeal

Plaintiff attempts to include new factual assertions regarding an alleged relationship between Peoria County and the Defendants that were not part of the record before the District Court. The Court should not entertain factual allegations raised for the first time in his brief on appeal. His FAC did not mention these additional facts and made clear the 21 separate counts that he was asserting. While the Court will "draw reasonable inferences in the [plaintiff's] favor, [it] should not draw inferences that while theoretically plausible are inconsistent with the pleadings." *Hill v. Vannatta*, 123 F. App'x 723, 725 (7th Cir.

22

2005) (*citing Holman v. Indiana*, 211 F.3d 399, 406–07 (7th Cir. 2000)), *quoted in*

*Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679

(7th Cir. 2004); *Guise v. BWM Mortgage*, LLC, 377 F.3d 795, 799 (7th Cir. 2004).

## B.  Plaintiff Cannot Assert New Claims on Appeal

### 1.  Section 1983 procedural waiver

On appeal, Plaintiff does not argue that the District Court's findings with

respect to the tort claims the District Court *actually* analyzed were erroneous –

rather, he claims that the District Court erred in failing to construe the FAC as (a)

implicitly naming (or requiring joinder of) non-party Peoria County, a state

actor, as a defendant, and (b) implicitly alleging violation(s) of 42 U.S.C. § 1983.

Alternatively, Plaintiff claims the District Court erred in not allowing him leave

to amend the FAC to explicitly name Peoria County and assert his new claim(s).

Apart from initial amendments that are permissible as a matter of course, "a

party may amend its pleading only with the opposing party's written consent or

the court's leave." FED. R. CIV. P. 15(a)(2). The proper vehicle for seeking the

court's leave is by motion in accordance with FED. R. CIV. P. 7(b). "'A motion to

amend should state with particularity the grounds for the motion and should be

accompanied by the proposed amendment.'" *Gonzalez-Koeneke v. West*, 791 F.3d

801, 807 (7th Cir. 2015) (*quoting Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d

1127, 1139 (7th Cir. 1986)). Without a request for leave to amend, nor any

indication to the court how an amendment might cure the problems in a complaint, a district court does not abuse its discretion in dismissing the complaint with prejudice. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018).

Here, Plaintiff did not obtain Defendants' written consent to amend his FAC to add a new party or new claims. Nor did he file a motion seeking the District Court's leave. The fact that Plaintiff failed to seek leave to amend or to mention either the implicit claim or party when the time came to present legal arguments in the proceedings below is fatal to Plaintiff's theory on appeal. *See Teumer v. General Motors Corp.*, 34 F.3d 542, 545-46 (7th Cir. 1994) (noting that "what is fatal to Teumer's § 502(a)(1)(B) theory on appeal is his failure to mention it to the district court when the time did come in the proceedings below to present legal arguments linking the claims described in the complaint to the relevant statutory (or other) sources of relief[]" and that "[t]he failure to draw the district court's attention to an applicable legal theory waives pursuit of that theory in this court.").

### 2. Plaintiff failed to request leave to amend to name state actor Peoria County

In his opening brief, Plaintiff argues that "he implicitly named Peoria County as a state actor defendant in the body of his pro se complaint and explicitly alleged state action during his motion practice." CA7 R. 15 at 3,  24-25. With

24

respect to his argument that he implicitly named Peoria County in his FAC, Plaintiff relies primarily on *Donald v. Cook County Sheriff's Department* for the proposition that pro se complaints should be liberally construed and may be interpreted as naming defendants who are named only in the body of the complaint.  95 F.3d 548, 559 (7th Cir. 1996). Plaintiff's reliance on *Donald*, however, is misplaced. Unlike *Donald*, Plaintiff never specifically named Peoria County as a defendant in the body of his FAC.[7] Moreover, also unlike *Donald*, Plaintiff here made *no attempt* to amend his FAC to name Peoria County as a defendant, either before or after Defendants filed their dispositive motions.

With respect to the proper treatment of a pro se plaintiff's complaint and failure to name individual defendants in the caption, the Seventh Circuit explained in *Donald*:

> As noted, Donald's *colorable claims* against the individual defendants were reflected in the original complaint. Even if Donald's intent to sue these individuals had not been entirely clear from the original complaint, however, it was clarified by his later filings . . .

> \* \* \*

---

[7] It is unclear from Plaintiff's principal brief whether his purported claims are against Peoria County or the Peoria County Sheriff's Department. With respect to his FAC, "Peoria County" appears only in the body of the FAC in connection with the geographical location of the airport. *See* R. 12, at ¶¶ 2 and 36. "Peoria Sheriff's Department" never appears in the body of the FAC. Moreover, the paragraph that allegedly names Peoria County implicitly in the body of the FAC, Paragraph 34, concerns the Arizona encounter—not the Peoria encounter. Thus, the only state actor potentially implicated by that allegation is the local law enforcement body of Maricopa County, Arizona, not  the local law enforcement body in Peoria County, Illinois.

> Donald's second attempt to amend his complaint was mailed on
> September 9, 1993, very shortly after the Department filed its motion
> to dismiss in reliance on *Monell*. In this motion, Donald explicitly
> attempted to add as defendants the individuals he deemed
> responsible for his injuries, though he was unable to identify each of
> them by name.

95 F.3d at 556 (emphasis added).

As such, in *Donald* this Court was concerned with pro se plaintiffs who are unable to discover the identities of the individual officials who were responsible for the harms alleged and erroneously name the institution as the defendant in their complaint. *Id.* at 557-58. That is not the case here. Nor is it the case that the District Court violated its "special responsibility to construe pro se complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim." *Id.* at 555. To the contrary, and as discussed below, the District Court not only construed the FAC liberally, but also considered issues raised by Plaintiff in his response briefs that were not raised in the FAC.

Simply put, the extraordinary circumstances present in *Donald* and the diligence of the pro se plaintiff in that case in his efforts to identify the individual defendants and amend his complaint to properly name those individuals are simply absent in the present case. Here, Plaintiff never sought leave to amend his FAC to name the "indispensable" state actor, Peoria County, as a defendant even

26

after the various Motions to Dismiss should have alerted him to fatal flaws in the

FAC. As the District Court correctly recognized in its Order and Opinion,

Plaintiff was the master of his FAC and liberal construction of pro se pleading

does not include a *sua sponte* or unilateral substitution of parties against whom

Plaintiff has not elected to sue. R. 46 at 31. In failing to request leave to amend or

join Peoria County as a party, Plaintiff waived his right to argue that it was error

for the District Court not to grant him that relief. Accordingly, the District

Court's judgment should be affirmed.

### 3. Plaintiff failed to request leave to amend to assert Section 1983 or Fourteenth Amendment violation claims

Plaintiff similarly failed to seek leave from the District Court to amend his

FAC to explicitly allege 42 U.S.C. § 1983 as a statutory basis for his relief for

purported violations of his Fourteenth Amendment rights, nor did he raise those

arguments in his District Court briefs. In failing to request leave to amend to

assert his new claims, he waived his right to argue that the District Court's

failure to grant leave was error. *Teumer v. General Motors Corp.*, 34 F.3d 542, 545-

46 (7th Cir. 1994) (although Plaintiff's complaint need not plead legal theories,

the failure to draw the district court's attention to an applicable legal theory

when the time came to present legal arguments waives pursuit of that theory on

appeal); *see also Harris v. City of Houston*, 151 F.3d 186, 190-91 (5th Cir. 1998)

(finding  no support for the  notion that appellate court may fashion relief not

27

requested below in order to keep a suit viable and refusing to "read into" appellants' complaint additional requests for relief and then proceed to an adjudication on the merits).

Moreover, Pekoske's Motion to Dismiss distinguished the *Bivens* cause of action Plaintiff asserted against him by contrasting it with the statutory cause of action Congress enacted in 42 U.S.C. § 1983 for constitutional tort claims against state or local officials. R. 34 at 8. Plaintiff's response in opposition to that Motion did not address Section 1983 claims. R. 40. Nor did Plaintiff's brief state that he was alleging a Section 1983 claim against *all* defendants as co-conspirators with the implicitly named Peoria County local law enforcement state actor at the airport. Plaintiff's failure to explicitly bring to the District Court's attention the Section 1983 claim(s) he now argues were implicitly raised further demonstrates that the District Court's failure to grant leave to amend was not erroneous. *See, e.g.*, *Haywood*, 887 F.3d at 335 (courts are within their discretion to dismiss with prejudice where a party does not make a request to amend or show how an amendment would cure the defects of the complaint); *Gonzalez-Koeneke*, 791 F.3d at 808 (same); *see also Builders NAB LLC v. Federal Deposit Insurance Corporation*, 922 F.3d 775, 778 (7th Cir. 2019) (legal contentions must be presented in the district court before it acts rather than in a motion filed after judgment); *Wheeler v. Hronopoulos*, 891 F.3d 1072, 1073 (7th Cir. 2018) (failing to bring an argument to

the district court generally means you waive that argument on appeal; even if based on a claim that that the district court arguably missed but was never alerted to). The judgment in favor of Defendants should be affirmed.

### 4. The district court considered new facts alleged in Plaintiff's briefing, and a liberal interpretation of the FAC under a pro se standard will not save Plaintiff

Although the District Court did not construe Plaintiff's FAC as asserting a 42 U.S.C. § 1983 claim that was not alleged or claims against a state actor who was not named or served, the District Court did consider new facts alleged in Plaintiff's briefing and afforded the FAC a liberal construction in ruling on the various Motions to Dismiss. R. 46 at 6-7. Plaintiff's FAC and the briefs in the proceedings below simply failed to state a cause of action against any of the Defendants on any reading of the facts alleged. And, as discussed further below, the arguments Plaintiff makes in his opening brief regarding a conspiracy among the federal, state and private actors to deprive Plaintiff of his constitutional rights is substantively untenable under any construction. Accordingly, the District Court did not err, and the judgment in favor of Defendants should be affirmed.

### C. A Section 1983 Claim Against Defendants Is Substantively Untenable

As previously discussed, Plaintiff argues that he "implicitly named Peoria County as a state actor defendant[,]" CA7 R. 15 at 3, and asks this Court to remand the matter to the District Court so he can actually name Peoria County as

29

a defendant and plead an entirely new cause of action for a conspiracy under Section 1983. But even assuming *arguendo* that such relief were available (it is not), Plaintiff's request should nonetheless be denied because there is no set of facts that would make a Section 1983 cause of action tenable here.

To establish Section 1983 liability through a conspiracy theory, a plaintiff must plead and prove that (1) a state official reached an understanding with private individuals to deprive the plaintiff of his or her constitutional rights, and (2) the private individuals were willful participants in joint activity with the State or its agents. *Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir. 2003). Plaintiff has not pled and cannot prove any facts needed to establish Section 1983 liability.

### 1. Plaintiff fails to allege that defendants reached an understanding with Peoria County to deprive him of his constitutional rights

A conspiracy charged under Section 1983 requires a showing that public and private actors shared the common goal of violating the plaintiff's constitutional rights and reached an understanding to do the same. *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir. 1999). Plaintiff conjured the alleged conspiracy in this case in hindsight after speaking with a Peoria County Sheriff's deputy and learning that "there was no official policy in place for protecting [his] rights during the security screening process." CA7 R. 15 at 27.

With the benefit of this knowledge, Plaintiff contends that the District Court erred by failing to recognize that the "[t]he only entity in the TSA airport

checkpoint scheme with the power to deprive [him] of his liberty through arrest

under color of law is Peoria County." *Id.* at 7. Plaintiff says he "faced arrest by

local law enforcement if he failed to follow TSA orders while in TSA control" and

claims he would have "simply walked away from the checkpoint if it weren't for

the guarantee of arrest." *Id*. at 7-8.

Construing these allegations in the light most favorable to Plaintiff, he

appears to assert that the Peoria County Sheriff's deputies on duty at the Peoria

International Airport on August 12, 2018 agreed to (1) stand idly by while the

TSA enforced unconstitutional screening provisions, and (2) arrest Plaintiff if he

failed to comply with the TSA. However, Plaintiff fails to sufficiently allege that

the Defendants reached an *understanding* with Peoria County that they would

each play these respective roles in effectuating the alleged constitutional

violations. *Stagman*, 176 F.3d at 10. Indeed, the policies complained of are

constitutional, as the Fourth Amendment does not guarantee a passenger a right

to withdraw from screening once initiated.  *See, e.g., United States v. Aukai,* 497

F.3d 955, 960-61 (9th Cir. 2007) (*en banc*) (analyzing why passengers may not

unilaterally abandon security screening).

Further, assuming *arguendo* that Plaintiff's constitutional rights were indeed

violated, Plaintiff does not allege that the participants in the conspiracy had any

*knowledge* of the violation. In fact, Plaintiff says he spoke with a Peoria County

31

Sheriff's deputy who "*did not know* the law with regard[] to [Plaintiff's] rights as a traveler with a disability." CA7 R. 15 at 27 (emphasis added). A conspiracy cannot be established under Section 1983 when the necessary state actor has no knowledge of the alleged constitutional violation. This negates any notion that the alleged co-conspirators reached an understanding that they would pursue the shared goal of violating Plaintiff's constitutional rights.

Moreover, even if it were possible for the alleged co-conspirators to reach such an understanding, Plaintiff says nothing about the time or scope of the alleged agreement. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). His theory is based on mere speculation and conjecture and is improperly drawn from the assumption of a general conspiratorial objective. *See Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). At best, his allegations suggest negligence, on which Section 1983 claims cannot be founded. *Id*.

### 2. Plaintiff fails to allege that defendants were willful participants in any joint activity with Peoria County

Plaintiff's inability to establish willful participation further forecloses his ability to state a valid conspiracy claim under Section 1983. In dismissing Plaintiff's common-law negligence claims, the District Court reviewed Plaintiff's allegations and found nothing to indicate that the Defendants had any knowledge of Plaintiff's hidden medical condition:

- Put simply, Plaintiff fails to demonstrate Defendant Allegiant Air had the requisite knowledge to give him the notice he believes was due. R. 46 at 21.

- To the extent Plaintiff argues he was owed a warning prior to his arrival for TSA screening, his argument fails because he repeatedly maintains his medical condition was hidden and private. Absent knowledge that the screening process would be dangerous for Plaintiff, no duty to warn can attach. *Id.* at 32. Moreover, as the District Court expressly noted, it is common knowledge that airline passengers must undergo TSA screening prior to a flight. *Id*. at 19.

- Plaintiff alleges no facts from which the Court can infer Defendant L3 would or could have had any knowledge of Plaintiff's medical condition or that the equipment it developed would trigger the events which allegedly caused Plaintiff's damages. *Id.* at 38.

Plaintiff did not challenge any of these findings on appeal. As a result, he is unable to show that the Defendants knowingly violated his rights. *See Duncan v. City of Wis. Dep't of Health and Family Servs.*, 166 F.3d 930, 934 (7th Cir. 1999) (stating that "a party must develop any arguments it wishes this court to consider in its appellate brief, or they will be deemed waived or abandoned"). Moreover, it stands to reason that Defendants could not have willfully

33

participated in any joint activity with Peoria County to expose a hidden medical condition *that they knew nothing about.*

Further, even if Plaintiff could somehow show that the TSA willfully participated in joint activity with Peoria County to deprive him of his constitutional rights, Plaintiff says nothing to establish the willful participation of L3 and/or Allegiant. Plaintiff's allegations establish only that L3 manufactured the airport security screening technology employed by the TSA and Allegiant sold Plaintiff a ticket for a roundtrip flight from Arizona to Peoria and back. Plaintiff fails to explain how this amounts to willful participation in a conspiracy. *See Messman v. Helmke*, 133 F.3d 1042, 1045 (7th Cir. 1998) ("a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983"). Plaintiff's failure to sufficiently allege the willful participation of a private actor is fatal to his newly attempted claim.

### 3. Plaintiff improperly alleges conduct taken under color of federal law

Another critical aspect of any Section 1983 analysis is the distinction between actions taken under color of state law and those taken under color of federal law. Section 1983 provides a right of action for constitutional deprivations that occur under color of *state law. Alarm Detection Systems v. Village of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019). Thus, while a Section 1983 action will not lie against federal officials who act under color of federal law, it can lie against

34

federal officials if they conspire with state officials to deprive a person of his or her civil rights under color of state law. *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003).

But not every action by a state official is taken under color of state law. *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001). Here, Plaintiff does not allege that Peoria County cloaked the Defendants with any degree of state authority. To the contrary, Plaintiff consistently alleges that Peoria County was "*enforcing federal law*" at the TSA checkpoint. CA7 R. 15 at 27 (emphasis added). Plaintiff further claims that he learned from a Peoria County Sheriff's deputy that he would have been arrested if he failed to "*obey TSA personnel.*" *Id.* (emphasis added). If anything, this suggests that the alleged conspiracy was carried out under color of federal law, not state law.

*Case* is informative on this point. *Case* involved an encounter on the grounds of the Great Lakes Naval Base in which federal officers were called to intervene. The plaintiff was eventually charged with disorderly conduct under Illinois law. He filed a Section 1983 claim alleging that the officers violated his constitutional rights under the Fourth and Fifth Amendments, but the district court dismissed the claim under Rule 12(b)(6), finding the plaintiff had failed to allege that the officers were acting under color of state law. *Id.* at 566. Despite the state charge, the appellate court affirmed and held that the federal officers' actions were taken

35

under color of federal law. The appellate court reasoned that the officers appeared on federal property in response to a complaint by a federal employee, and their subsequent conduct "reflected their federally-assigned duty to patrol federal property." *Id*. at 568.

Like the plaintiff in *Case*, Plaintiff has alleged a conspiracy to deprive him of his constitutional rights under color of federal law. He appears to believe that Peoria County's status as a state actor means all actions taken by the alleged co-conspirators are cloaked with the color of state law. He is mistaken. As was made clear in *Case*, the mere applicability of a state law—or, in this case, a county policy—is not enough to establish conduct taken under color of state law. Plaintiff maintains throughout his brief that his conspiracy theory rests on actions taken to promote the *enforcement of federal law*. There is no basis to conclude that any of the Defendants were acting under color of state law, which is required to state a conspiracy claim under § 1983. *Alarm Detection Systems*, 930 F.3d at 825.

### 4. Plaintiff has no viable federal constitutional claims

Moreover, a conspiracy claim under Section 1983 necessarily fails absent a viable constitutional claim. *Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016). In the FAC, Plaintiff claims federal constitutional violations of his rights to privacy and due process, as well as his right "to be free from unreasonable search

36

as guaranteed by the Fourth Amendment." R. 12 at 13. Plaintiff also claims

discrimination under Section 504 of the Rehabilitation Act of 1973. *Id*. at 24. In his

opening brief, Plaintiff argues that he implicitly alleged an additional violation of

his right to equal protection under the Fourteenth Amendment. CA7 R. 15 at 19.

The District Court declined to reach the merits of Plaintiff's constitutional

claims due to a lack of subject matter jurisdiction. In reaching this decision, the

District Court found the First Circuit's decision in *Ruskai v. Pistole*, 775 F.3d 61

(1st Cir. 2014), to be "particularly illustrative." R. 46 at 27.  The *Ruskai* court

concluded that a challenge to the TSA's pat-down requirement constituted a

challenge to the TSA's Standard Operating Procedures — which are within the

exclusive jurisdiction of the Courts of Appeal under 49 U.S.C. § 46110. *Ruskai*, 775

F.3d at 65. Here, the District Court ruled that Plaintiff failed to explain how he

was not directly challenging the SOP or how his claims were not "inescapably

intertwined with review thereof." R. 46 at 27.

*Ruskai* also demonstrates why Plaintiff's constitutional claims lack merit,

even if they were properly brought before this Court in the first instance. The

plaintiff in *Ruskai* was subjected to physical pat-downs when she triggered alerts

at TSA checkpoints due to her metallic joint replacement. She claimed this

constituted an unreasonable search under the Fourth Amendment and violated

section 504 of the Rehabilitation Act of 1973. *Ruskai*, 775 F.3d at 65.  The First

Circuit disagreed with the plaintiff in *Ruskai*. After balancing our national security interests against the plaintiff's privacy concerns, the *Ruskai* court stated that while the physical pat-down searches were undoubtedly intrusive, "given the scale of the risk, the safety interests at stake are also dramatically more acute." *Id.* at 75. Moreover, there is no constitutional requirement that a physical pat-down search be minimally intrusive. *Id.* at 77. *Accord Corbett v. Transportation Security Administration*, 767 F.3d 1171, 1181-82 (11th Cir. 2014) (holding that airport passenger screening technology poses only a slight intrusion on an individual's privacy, and a secondary physical pat-down is a reasonable administrative search); *Aukai*, 497 F.3d at 960 (airport screening searches are constitutionally reasonable administrative searches, which are not dependent on consent); *United States v. McDonald*, 100 F.3d 1320, 1324-25 (7th Cir. 1996) (noting that a person in transit on an airplane enjoys a substantially reduced privacy interest as compared to someone within a fixed dwelling).

In addition, Plaintiff's equal protection claim is belied by his admission that he has travelled through TSA checkpoints since the date of the Peoria encounter without any incident. In responding to L3's motion to dismiss, Plaintiff explained that in June 2019, he passed through the TSA checkpoint without triggering any "false threat alarms." This happened because his hernia remained "inside his body cavity" instead of "slipping through his inguinal canal" when he put his

hand up during the screening process. R. 42 at 7. In his opening brief, Plaintiff says he "cannot know whether the unpredictable and uncontrollable symptoms of his completely human tissue… will manifest to the extent necessary to trigger a false [Automated Target Recognition] threat alarm at his right groin, which requires TSA physical 'pat-down' to resolve." CA7 R. 15 at 22.

Only deliberate discrimination is actionable under the equal protection clause. *Chicago Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 653 (7th Cir. 2001). It is difficult to imagine how the Defendants could be guilty of deliberate discrimination under the circumstances that Plaintiff describes. If Plaintiff does not become symptomatic during the screening process, then there is apparently no discrimination. However, if by chance Plaintiff becomes symptomatic during the screening process, and an anomaly is detected near his groin, then he believes he is the victim of discrimination. Plaintiff reasons that "a control group of men with groin hernias who decided to have surgery are not discriminated against, but [Plaintiff] is discriminated against solely for his private marital healthcare choice regarding the treatment of his congenital disability." CA7 R. 15 at 18.

Plaintiff is again mistaken. To make a valid claim of discrimination, Plaintiff needs to show that he is treated differently than other men with groin conditions who did *not* have corrective surgery. He needs to show, for instance, that other men exhibiting protruding hernias near their groin received favorable treatment

39

and were *not* identified for physical pat-downs. The fact that Plaintiff is only selected for a physical pat-down when he becomes symptomatic establishes that (1) L3's screening technology is effective in detecting anomalies, and (2) Plaintiff is treated the same as any other similarly situated passenger.

### 5. Any Section 1983 claim is simply not plausible

In sum, it is beyond far-fetched that Defendants would have conspired with Peoria County to deprive Plaintiff of his constitutional rights. Plaintiff presumes the existence of a common goal to reveal his medical condition before allowing him to board a flight. Setting aside the lack of any plausible motive (absent legitimate national security concerns), Plaintiff also has failed to allege sufficient facts showing a conspiratorial agreement, failed to show that the alleged conspiracy was carried out under color of state law, and failed to establish any valid constitutional claims. Contrary to Plaintiff's assertions, his story does not hold together, and this Court should hold that Plaintiff cannot state a valid claim of a conspiracy under Section 1983.

## II. The Federal Defendants' Individual Arguments

### A. Any Petition to Challenge the TSA Checkpoint Screening Procedure is Untimely

Pursuant to 49 U.S.C. § 46110(a), a petition for review challenging a final Standard Operating Procedure of the TSA must be brought in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of

the United States for the circuit in which the person resides or has his principal

place of business within 60 days after the order is issued. The only stated

exception to this short time period is if the Court finds reasonable grounds for

not filing by the 60th day. 49 U.S.C. § 46110.

Here, TSA's Checkpoint Screening Procedure was revised on September 17,

2010 to "direct[ ] the use of AIT machines as part of TSA's standard security

screening procedures, as well as the use of revised procedures for the standard

pat-down." *Roberts v. Napolitano*, 798 F. Supp. 2d 7, 9 (D.D.C. 2011), *aff'd*, 463 F.

App'x 4 (D.C. Cir. 2012). Even considering Plaintiff's initial complaint, which

was filed on July 31, 2020, his attempt to challenge the TSA's Checkpoint

Screening Procedure was brought well outside the 60-day period allowed to

challenge a final agency order. Moreover, Plaintiff has shown no reasonable

grounds for not filing his challenge sooner (*e.g.*, within 60 days after he claims to

have been injured by the execution of the procedure at the Phoenix and Peoria

airports.) Accordingly, any attempt by Plaintiff to challenge the Checkpoint

Screening Procedure in this suit is untimely and must fail. *See Skolnick v. F.A.A.*,

133 F. App'x 368 (9th Cir. 2005); *Taylor v. Huerta*, 856 F.3d 1089 (D.C. Cir. 2017).

**B. Plaintiff's Attempt to Construe His Appeal as a Petition Challenging TSA's Checkpoint Security Procedures Embedded in His Opening Brief Is Improper**

Pursuant to 49 U.S.C. § 46110, the Courts of Appeals have exclusive jurisdiction over challenges to TSA's Standard Operating Procedures. Specifically, § 46110(a) provides that:

> [A] person disclosing a substantial interest in an order issued by . . . the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration . . . in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of that order by filing a petition for review in the United States Courts of Appeals for the District of Columbia Circuit or in the courts of appeals of the United States for the circuit in which the person resides . . .

49 U.S.C. § 46110(a). The statute confers on the Courts of Appeals "exclusive jurisdiction to affirm, amend, modify or set aside any part of [such an] order." 49 U.S.C. § 46110(c).

The Screening Checkpoint Standard Operating Procedure at issue in Plaintiff's FAC constitutes an "order" within the scope of § 46110. *See* 49 U.S.C. § 46110(a); *Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) (affirming district court's ruling that a TSA "Checkpoint Screening" procedure was an order under § 46110 and collecting authority); *Gilmore v. Gonzales*, 435 F.3d 1125, 1135 (9th Cir. 2006) (same); *Corbett v. United States*, 458 F. App'x 866, 870 (11th Cir. 2012) (same). Courts consistently hold that challenges that implicate TSA's screening

requirements or that are inextricably intertwined with them, even under the Rehabilitation Act, are appropriately heard in the court of appeals in the first instance. *See, e.g.*, *Ruskai*, 775 F.3d 61 (reviewing passenger's Rehabilitation Act claim in conjunction with constitutional challenges); *Corbett,* 458 F. App'x at 870 (passenger challenging TSA screening procedures could not escape Section 46110 by asserting a broad constitutional challenge). Because exclusive jurisdiction over challenges to the Screening Checkpoint Standard Operating Procedure lies with the court of appeals, the district court lacked subject matter jurisdiction over Plaintiff's constitutional and Rehabilitation Act claims. *See* 49 U.S.C. § 46110.

Rather than bringing a petition for review directly in the Court of Appeals, Plaintiff has embedded a request that his appeal from the district court's order be treated as an independent petition for review. That is completely improper. A sample petition for review can be found as Form 3 in the Appendix of Forms to Federal Rules of Appellate Procedure on the Seventh Circuit's web page and should be filed separately with a separate filing fee. The District Court relied on *Ruskai* in noting that Plaintiff's claims against the Federal Defendants "must be brought to the Court of Appeals in the first instance." R. 46 at 28. Plaintiff should not be allowed to use his appeal from the district court's order as a Trojan Horse to smuggle a direct petition for review before the Court.

### III. L3's Individual Arguments: The District Court's Dismissal of L3 Should be Affirmed on the Merits.

In his First Amended Complaint ("FAC"), Plaintiff attempted to bring claims against L3 for negligence, negligent infliction of emotional distress ("NIED"), and intentional infliction of emotional distress ("IIED"). Each claim was brought once for the Arizona encounter and once for the Peoria encounter. R. 12 at 17-20. The District Court ruled that every claim was invalid under Rule 12(b)(6). R. 46 at 37-39.[8]

In his opening brief, Plaintiff does not challenge the District Court's ruling that he failed to state a valid claim against L3. He argues instead that he should be afforded the opportunity to state an entirely new claim—a 42 U.S.C. § 1983 conspiracy —based solely on the Peoria encounter. Thus, as was established *supra* at pp. 21-22 in the joint portion of this brief, Plaintiff has waived and/or abandoned his claims against L3 as stated in the FAC. *See Duncan v. City of Wis. Dep't of Health and Family Servs.,* 166 F.3d 930, 934 (7th Cir. 1999). To alleviate any possible doubt, Plaintiff goes so far as to argue that his newly alleged § 1983 claim is his "sole legal cause of action." CA7 R. 15 at 9. For these reasons, the District Court's dismissal of L3 should be affirmed based on waiver and/or

---

[8] The District Court noted that, although Plaintiff invoked various constitutional principles, there was no indication as to how L3 could be liable for a constitutional violation. The District Court therefore ruled that Plaintiff's claims against L3 sound in tort and analyzed them accordingly. R. 46 at n. 15.

abandonment without the need for any further inquiry. The arguments below
are, accordingly, offered in the alternative.

### 1. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain
sufficient factual allegations to state a claim for relief that is "plausible on its
face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough to allege a sheer
possibility that a defendant has acted unlawfully. *Id*. While a court must
generally accept a plaintiff's factual allegations as true, it does not accept a
plaintiff's legal conclusions that are merely couched as factual allegations. *Id*.
This Court reviews a district court's Rule 12(b)(6) dismissal *de novo*. *Lewis v. City
of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019).

### 2. The district court correctly ruled that Plaintiff cannot state a cause of action against L3 for ordinary negligence

To establish a claim for ordinary negligence, whether in Arizona or Illinois,
Plaintiff must show that: (1) L3 owed him a duty; (2) L3 breached the duty owed;
(3) Plaintiff suffered an injury that was proximately caused by L3's breach; and
(4) Plaintiff suffered resulting damages. See *Ryan v. Napier*, 425 P.3d 230, 235
(Ariz. 2018); *Doe v. Coe*, 135 N.E.3d 1, 12 (Ill. 2019).[9] Plaintiff did not satisfy any of

---

[9] The District Court applied Illinois law after determining that neither party identified
a relevant conflict between Arizona and Illinois law pertaining to negligence claims.

these elements in the FAC. The following is a list of Plaintiff's allegations against

L3—they say nothing about a duty, breach, or causation.

- "L3's proprietary ATR software processed Muir's passenger screening data image in order to search Muir for anomalies and threats on his body in accordance with 49 U.S.C. § 44901(l)(A)(i) and 49 C.F.R. § 1540.107(d)(l)(i)." R. 12 at ¶¶ 25, 45.

- "L3's proprietary ATR software returned a false threat alarm at Muir's right groin that misidentified the uncontrollable symptom manifestation of Muir's <u>hidden,</u> beneath the skin physical disorder at his right groin as a foreign material object on the surface of his skin at his right groin." R. 12 at ¶¶ 26, 46 (underlined language found only at ¶ 26).

- "L3's proprietary ATR software singled-out Muir as compared to other similarly-situated travelers and returned a false threat alarm at Muir's right groin solely because of his congenital physical disorder at his right groin and his private marital healthcare decisions regarding that disorder." R. 12 at ¶¶ 27, 47.

- "Muir's hidden physical disorder at his right groin is entirely human tissue, entirely underneath his skin and entirely consistent with his expected reproductive anatomy." R. 12 at ¶¶ 28, 48.

- "Based solely on the false right groin threat alarm generated by L3's proprietary ATR software, TSA moved Muir for mandatory additional interrogation and separated him from his personal property, which was cleared to enter the sterile area." R. 12 at ¶¶ 29, 49.

- "[t]he actions of L3 described herein… constitute negligence through L3's failure to reasonably address known problems with its proprietary ATR software that L3 knew or should have known could violate Muir's reasonable expectation of privacy and Muir's due process rights while his freedom of movement was restricted." R. 12 at ¶¶ 87, 93.

The District Court concluded that Plaintiff alleged no set of facts from which

it could infer that L3 had any knowledge of Plaintiff's medical condition or that

the screening equipment L3 developed would trigger the events alleged by Plaintiff. R. 46 at 38. Plaintiff thus "failed to identify any legal theory which would impose a duty on Defendant L3 in this context." *Id.* at 39. The District Court further held that allowing a second amended complaint would be futile, because Plaintiff had no "direct interaction" with L3. *Id.* at 39.

A review of Plaintiff's allegations reflects that the District Court was correct, and Plaintiff has made no attempt to argue otherwise. Given that Plaintiff failed to identify any legal duty owed to him by L3 and further failed to contest the District Court's rulings as stated above, there is simply no basis for this Court to disturb the District Court's ruling.

### 3. NIED and IIED [10]

In Illinois, the same elements needed for a showing of ordinary negligence are generally required to show NIED. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702-703 (7th Cir. 2009). The difference between the two claims is that a plaintiff claiming NIED can recover for an injury that was solely emotional, rather than physical. *Id.* However, a plaintiff claiming NIED must also show injuries that surpass a "threshold severity" to be cognizable. *Id.* at 707.

---

[10] The District Court again applied Illinois law to Plaintiff's claims of NIED and IIED based on the lack of any relevant conflicts with Arizona law.

Here, Plaintiff alleges that he told the TSA he was experiencing a "serious medical emergency" and he had never been touched at his right groin by anyone else during a "disorder related emergency." Plaintiff claims he also told the TSA that this unwanted touching would result in "extreme physical pain and could endanger his life." R. 12 at ¶¶ 32, 52.

For the same reasons discussed above, Plaintiff cannot establish his claim against L3 for NIED. Moreover, in terms of causation, his allegations implicate the TSA rather than L3. And even if Plaintiff could satisfy the ordinary elements of duty, breach, and causation, he has not properly alleged any injuries that would surpass the requisite *threshold for severity*, as his allegations are wholly conclusory in that respect. Plaintiff cannot establish the severity of this injury by simply claiming that (1) he told the TSA that anyone touching his groin would endanger his life, and (2) the TSA's alleged defiance caused him to suffer permanent damage and psychological distress with physical manifestations.

Turning to Plaintiff's claim for IIED, to state such a claim, it must be shown that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that emotional distress would result; and (3) the plaintiff indeed suffered severe emotional distress as a result of the defendant's conduct. *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 50 (Ill. 2016).

Here, Plaintiff's allegations fall woefully short of establishing any of the required elements for IIED. He has alleged no conduct on the part of L3 that could be considered extreme or outrageous, and there are no allegations that L3 had any knowledge of Plaintiff's medical condition such that it could have disregarded the near certainty of causing him emotional distress.

### 4. Plaintiff's medical condition was not "misidentified"

Plaintiff correctly asserts that L3's airport passenger screening equipment performed in accordance with 49 U.S.C. § 44901 and 49 C.F.R. § 1540.107. R. 12 at ¶ 25. These provisions cover the use of "Advanced Imaging Technology" ("AIT") and "Automatic Target Recognition" ("ATR") software for use in screening airport passengers.

- **Advanced Imaging Technology** means "a device used in the screening of passengers that creates a visual image of an individual showing the surface of the skin and revealing other objects on the body." 49 U.S.C § 44901(l)(1)(A) (2018); 49 CFR § 1540.107(d)(1) (2018).

- **Automatic Target Recognition** software means "software installed on an advanced imaging technology that produces a generic image of the individual being screened that is the same as the images produced for all other screened individuals." 49 U.S.C § 44901(l)(1)(C) (2018); 49 CFR § 1540.107(d)(2) (2018)..

AIT scanners raised privacy concerns when they were first introduced. They were viewed as generating, in effect, nude pictures of passengers. *Ruskai v. Pistole*, 775 F.3d 61, 63 (1st Cir. 2014). ATR software was developed to address these concerns.

49

AIT scanners that utilize ATR software—like the scanners at issue in this case—do not collect any personally identifiable information and do not display any individualized images of passengers. *Corbett v. Transportation Security Administration*, 930 F.3d 1225, 1238 (11th Cir. 2019). Rather, ATR software "temporarily overlays the location of potential threats onto a generic and stylized figure." *Id*. Plaintiff is therefore correct in his assertion that L3's ATR software was designed to detect anomalies on his body in accordance with 49 U.S.C. § 44901 and 49 C.F.R. § 1540.107. R. 12 at ¶¶ 25, 45.

Plaintiff is wrong, however, to assert that his medical condition was "misidentified" as a "foreign material object." R. 12 at ¶ 26. While it is not specifically alleged, Plaintiff implies that L3's software is required to distinguish between "human tissue" directly beneath the surface of his skin and a "foreign material object" directly above the surface of his skin. Plaintiff provides nothing to support this implication beyond his hyper-technical reading of the statutory language referenced above, which defines ATR software as being capable of detecting objects "on" a generic image of the person being screened. *See Lott v. Not-For-Profit Hospital Corp.*, 319 F. Supp. 3d 277, 285 (D.D.C. 2018) (noting that courts must avoid hyper-technical readings of statutes which produce absurd results).

50

Contrary to Plaintiff's implication, there is no requirement that ATR software must be capable of distinguishing between natural protrusions and foreign objects. Ironically, requiring this degree of precision would threaten the very privacy concerns that led to the development of ATR software in the first instance. Rather than generating what amounts to nude images of passengers to identify precise threats, ATR software identifies anomalies appearing on images of generic mannequins. Hence, Plaintiff's naturally protruding hernia was not "misidentified" as a "foreign material object," but was rather appropriately identified as an anomaly appearing on a generic mannequin image that was produced during Plaintiff's screening.

The anomaly that was identified during Plaintiff's screening turned out to be a protruding hernia, according to Plaintiff, but it could just as easily have been a concealed device that posed a safety threat. The issue was successfully resolved after the TSA conducted a physical pat-down, and Plaintiff was permitted to board his flight. This is the exact process that Congress envisioned when it limited the capabilities of ATR software. As the Eleventh Circuit has explained, using ATR software to identify anomalies appearing on generic body scans is an effective way to reduce the risk of air terrorism while posing only a slight intrusion on individual passengers. *Corbett,* 930 F.3d at 1238.

### 5. The SAFETY Act

This Court is not limited by the argument credited by the District Court and may affirm the District Court's dismissal of L3 on any basis appearing in the record. *Fields v. City of Chicago*, 981 F.3d 534, 557 (7th Cir. 2020). L3 argued below that Plaintiff's claims should be dismissed pursuant to the government contractor defense provided by the SAFETY Act. See 6 U.S.C. § 442(d)(1). In support, L3 attached documents to establish that its airport passenger screening technology was certified for protection under the SAFETY Act. However, in declining to rule on L3's SAFETY Act defense, the District Court commented that it cannot generally consider outside evidence to decide a motion to dismiss without converting it into a motion for summary judgment. The District Court reasoned that L3's SAFETY Act documents "do not appear to fall within the narrow exceptions to this general rule." R. 46 at 36.

Respectfully, L3 maintains that the District Court could have properly considered L3's SAFETY Act documents. In ruling on L3's motion to dismiss, the District Court was able to consider outside documents if they were "critical to the complaint and referred to in it." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (*quoting Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

A review of Plaintiff's FAC shows that one of his many requests for relief involved directing the Department of Homeland Security (DHS) to "revoke L3's SAFETY Act Certification and Designation for its ATR software." R. 12 at 28. Thus, it was *Plaintiff* who made an issue of the SAFETY Act in the FAC—and sought to revoke the very documents that L3 subsequently attached to its motion to dismiss. Those documents can, therefore, be properly considered when ruling on a motion to dismiss under Rule 12(b)(6).

For these reasons, L3 hereby adopts and reincorporates its SAFETY Act defense and the arguments set forth in its motion to dismiss the FAC. *See* R. 37 at 6-7, 13-15; and R. 45 at 8-9]. In the event that this Court reaches the merits of the District Court's ruling and overrules it, L3 respectfully maintains that Plaintiff's claims should nonetheless be dismissed pursuant to L3's government contractor defense under the SAFETY Act.

### 6. Res judicata / statute of limitations

A claim can be dismissed under Rule 12(b)(6) based on a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). This applies with respect to res judicata and a statute-of-limitations defense, both of which are properly raised within a Rule 12(b)(6) motion for failure to state a claim. *Ennenga v. Starns*, 677 F.3d 766, 776 n.6 (7th Cir. 2012). In ruling on such a motion, it is appropriate for a

court to take judicial notice of public court documents. *Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017).

Before Plaintiff filed his claims in the District Court below, he brought them against L3 in the District of Arizona . His original and first amended complaints were based solely on the Arizona encounter. R. 37-1. Plaintiff attempted to file a second amended complaint in which he added claims and named additional defendants based on the Peoria encounter. R. 37-2. However, the District of Arizona struck the second amended complaint and denied Plaintiff leave to file the same. The District of Arizona ruled that Plaintiff's amended claims based on the Peoria encounter "clearly are without merit" and Plaintiff had "provided no basis for adding defendants and expanding the scope and nature of his claims." The District of Arizona court further noted that L3 had twice moved to dismiss Plaintiff's complaint and found that requiring L3 to file a third motion to dismiss would be "unfair and unduly prejudicial." R. 37-3.

In *Arrigo v. Link*, 836 F.3d 787, 799 (7th Cir. 2016), the Seventh Circuit joined other jurisdictions in holding that the denial of leave to amend a complaint constitutes a final order for purposes of res judicata. L3 argued below that, pursuant to *Arrigo*, the District of Arizona's ruling was a final judgment on the merits for purposes of res judicata.

In its ruling below, the District Court here stated that Plaintiff's voluntary dismissal of his Arizona lawsuit "puts a wrench in L3's arguments" and declined to rule on L3's argument. The District Court acknowledged that "the policies espoused in *Arrigo* could apply to situations such as this," but was cautious to follow *Arrigo* based on the lack of a final judgment on the merits in Plaintiff's Arizona lawsuit. The District Court reasoned that "L3 has not identified any case in which preclusion flowed from a case which was voluntarily dismissed, and the Court has found none." R. 46 at 35-36.

With all due respect to the District Court, L3 does not believe that Plaintiff's voluntary dismissal of his Arizona action "puts a wrench in L3's arguments." In *Muhammad v. Oliver*, 547 F.3d 874, 880 (7th Cir. 2008), this Court held that **"*when a plaintiff abandons a suit after an adverse ruling, the abandonment, though a voluntary dismissal, is res judicata.*"** (emphasis added, internal parentheses omitted).

*Muhammad v. Oliver* supports applying the rule from *Arrigo* under these circumstances. This Court held in *Arrigo* that allowing the plaintiff to refile the same claims in a second action that she was precluded from filing in the first action "would undermine the principles animating the doctrines of res judicata and claim splitting, as well as our decision upholding on appeal the denial of the motion for leave to amend." *Arrigo*, 836 F.3d at 800. Pursuant to *Arrigo* and *Oliver*, because Plaintiff's original complaint below consisted entirely of the

55

claims and allegations that were stricken by the District of Arizona, the original

complaint was barred as *res judicata*.   In light of the foregoing, L3 hereby adopts

and reincorporates its argument below that Plaintiff violated the fundamental

rule against claim splitting in his attempt to avoid the consequences of the

District Court here or the District of Arizona arriving at an adverse ruling. His

allegations regarding the Peoria encounter are therefore barred as *res judicata*,

and his allegations of the Arizona encounter are time barred. *See* R. 37 at 8-13; R.

45 at 2-8. In the event that this Court reaches and disagrees with the District

Court's merits ruling, L3 respectfully maintains that Plaintiff's claims should

nonetheless be dismissed on these alternative grounds.

### IV. Allegiant's Individual Argument: The Collection and Remittance of a 9/11 Security Fee is Neither Voluntary Nor Conspiratorial Conduct

With respect to Allegiant, the District Court's findings that Plaintiff's claims

for negligence, NIED and IIED failed as a matter of law are unchallenged and

should be affirmed on the merits. As the District Court correctly found, Allegiant

had no duty to warn Plaintiff of the screening required by federal law but

nonetheless did. *See* R. 46 at 19-21. His claim based on IIED against Allegiant fails

for the same reasons it did against L3. *See supra* at Section III.3. And he has made

no viable claim of any violation of his Federal Constitutional rights. *See supra*. §

I.C.4.

Rather, as discussed briefly in Section I.C.2 above, the only way that Plaintiff alleges Allegiant participated in the purported conspiracy was through its collection of a 9/11 Security Fee and the fee's remittance to the Department of Homeland Security ("DHS") as part of the ticket sale. That fact hardly establishes a conspiracy or Allegiant's voluntary or willful participation in one.

In his opening brief, Plaintiff alleges, without elaboration, that "Defendants participated in the conspiracy through the following voluntary conduct: . . . 3) Defendant Allegiant: Common Carrier responsible for collection of the 9/11 Security Fee and its remittance to DHS." CA7 R. 15 at 16-17. The requirements for the collection and disbursement of the 9/11 Security Service Fee are set forth in 49 C.F.R. § 1510.1, *et seq.*

Specifically, Section 1510.9 provides the following with respect to the collection of security service fees:

> The following direct air carriers and foreign air carriers must collect security service fees from passengers on—
>
> (1)　A scheduled passenger or public charter passenger operation with an aircraft having passenger seating configuration of more than 60 seats.
>
> (2)　A scheduled passenger or public charter passenger operation with an aircraft having a passenger seating configuration of less than 61 seats when passengers are enplaned from or deplaned into a sterile area.
>
> (b) Direct air carriers and foreign air carriers must collect from each passenger, to the extent provided in §

57

1510.5, a security service fee on air transportation sold on or after 12:00 a.m. (Eastern Daylight Time) on July 21, 2014. The security service fee must be based on the air travel itinerary at the time the air transportation is sold. Any changes by the passenger to the itinerary are subject to additional collection or refund of the security service fee by the direct air carrier or foreign air carrier, as appropriate.

(c) Whether or not the security service fee is collected as required by this part, the direct air carrier or foreign air carrier selling the air transportation is solely liable to TSA for the fee and must remit the fee as required in § 1510.13.

(d) Direct air carriers and foreign air carriers may not collect security service fees not imposed by this part.

49 C.F.R. § 1510.9.

With respect to remittance of the Security Service Fees, Section 1510.13

provides:

(a) Each direct air carrier and foreign air carrier must remit all security service fees imposed each calendar month to TSA, as directed by the Administrator, by the last calendar day of the month following the imposition.

(b) Direct air carriers and foreign air carriers may retain any interest that accrues on the principal amounts collected between the date of collection and the date the fee is remitted to TSA in accordance with paragraph (a) of this section.

(c) Direct air carriers and foreign air carriers are prohibited from retaining any portion of the principal to offset the costs of collecting, handling, or remitting the passenger security service fees.

(d) Security service fees are payable to the "Transportation Security Administration" in U.S. currency and drawn on a U.S. bank.

    (1) Fees of $1,000 or more must be remitted by electronic funds transfer.

    (2) Fees under $1,000 may be remitted by electronic funds transfer, check, money order, wire transfer, or draft.

(e) Direct air carriers and foreign air carriers are responsible for paying any bank processing charges on the security service fees collected or remitted under this part when such charges are assessed on the U.S. government.

49 C.F.R. § 1510.13.

Allegiant has found no authority supporting or even suggesting Plaintiff's assertion that an airline's compliance with this regulation constitutes its willful participation in a conspiracy to violate an individual's constitutional rights. That is not surprising because every airline—not just Allegiant—is obligated to comply with this regulation because it is required by law.

Other than referencing Allegiant's collection and remittance of a security fee, *as required by the federal regulatory scheme*, Plaintiff has made no allegation that Allegiant and state actors conspired to deprive Plaintiff of his constitutional rights. *See, e.g., Farrar v. McNesby*, 639 F. App'x 903, 906-07 (3d Cir. 2016) (noting that liability for deprivation of constitutional rights may only be established by showing of personal involvement of each defendant and vague allegations of conspiracy against private defendants, including airlines, did not satisfy

59

plausibility standard of Rule 12(b)(6) where, *inter alia*, plaintiff failed to set forth facts that would allow one to infer that defendants entered into an agreement for the purpose of targeting plaintiff's protected rights); *Diabate v. Delta Airline*, 13-CV-0918, 2014 WL 48001, *10 (D. Minn. Jan. 7, 2014) (denying pro se plaintiff's motion for leave to amend to assert conspiracy between U.S. Customs and Border Patrol, Delta Airline and TSA as futile where plaintiff does not assert any facts to suggest that such a conspiracy exists, let alone how any of the individuals he purports to add as defendants are part of the conspiracy).

Here, Plaintiff alleges only that Allegiant collects the federally mandated 9/11 Security Services Fees from its passengers when they purchase their ticket for transportation on an Allegiant-operated flight and disburses those fees to the federal government.[11] He does not—and cannot—allege that Allegiant had *any*

---

[11] Notably, suits have been brought against airlines for their failure to refund the 9/11 Security Fee collected in accordance with the issuance of a ticket that ultimately goes unused. *See, e.g., Kaye v. Southwest Airlines Co.*, No. Civ.A. 3:05CV0450-D, 2005 WL 2074327 (N.D. Tex. Aug. 29, 2005); *Brown v. Delta Airlines, Inc,*, Nos. CIV-03-871-L, CIV-03-901-L, CIV-03-943-L, 2004 WL 5041257 (W.D. Okla. Oct. 8, 2004). In each case, the airline was sued in state court and removed to the district court based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In *Brown,* for example, the airline argued that removal was proper because it was acting under the direction of a federal officer or agency when it collected and refused to refund the security fee at issue. *Id.* The district court disagreed and found that airlines could not be considered federal intermediaries. *Id.* "Rather, defendants merely collected fees that were then transmitted to the federal government for disbursement. If the court were to accept defendants' argument, every corporation that collects a tax or fee pursuant to a federal statute would be entitled to assert federal officer removal." *Id.*

Although not directly on point, these cases suggest that a private air carrier is not

direct involvement in his security screening at the TSA security checkpoint. In fact, as Plaintiff acknowledges, the TSA security screening checkpoint is a considered a purely "federal facility," *see* CA7 R. 15, p. 19 (citing *Narvaez v. American Airlines, Inc.*, No. 09-CIV-6397, 2010 WL 5072114, \*2 (S.D.N.Y. Dec. 13, 2010)), and federal regulations explicitly prohibit Allegiant from interfering with the security screening process, *see Hogan v. Northwest Airlines, Inc.*, No. 11-cv-14888, 2013 WL 607852, \*5 n.7 (S.D. Mich. Feb. 19, 2013). Accordingly, Plaintiff's belated allegations regarding Allegiant's supposed participation in the conjured-up conspiracy fail as a matter of law, and the District Court's judgment should be affirmed.

---

acting in concert with the federal government in collecting the service fees required by federal regulation, much less with the local law enforcement department at each individual airport across the country.

# CONCLUSION

For the reasons discussed above, this Court should affirm the judgment of the

district court.

Respectfully submitted,

KMA ZUCKERT LLC

DOUGLAS J. QUIVEY
*Acting United States Attorney*

/s/KEITH S. YAMAGUCHI
Keith S. Yamaguchi
Marnie A. Holz
KMA Zuckert LLC

By:  /s/ KIMBERLY A. KLEIN
Assistant United States Attorney
Office of the United States Attorney

200 West Madison Street, 16th Floor
Chicago, Illinois 60606
(312) 345-3000

One Technology Plaza
211 Fulton Street, Suite 400
Peoria, Illinois 61602
(309) 671-7050

*Attorneys for Defendant-Appellee,*
*ALLEGIANT AIR, LLC*

*Attorneys for Defendants-Appellees,*
*UNITED STATES TRANSPORTATION*
*SECURITY ADMINISTRATION, DAVID*
*PEKOSKE and CHAD F. WOLF*

ADLER MURPHY & MCQUILLEN LLP

/s/RICHARD C. HARRIS
Michael G. McQuillen
Christopher J. Raistrick
Richard C. Harris
Adler Murphy & McQuillen LLP

20 South Clark Street, Suite 2500
Chicago, Illinois 60603
(312) 345-0700

*Attorneys for Defendant-Appellee,*
*L3 HARRIS TECHNOLOGIES, INC.*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and (a)(6), as modified by Cir. R. 32(b), because I have prepared this brief in proportionally spaced typeface using Microsoft Word for Office 365 in 13-point (body) and 12-point (footnotes) Book Antiqua font. I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by Cir. R. 32(c), in that it contains 14,251 words.

/s/ KIMBERLY A. KLEIN
*Assistant United States Attorney*

## CERTIFICATE OF SERVICE

I certify that on May 18, 2021, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that participants in this case that are CM/ECF users will receive service via the CM/ECF system. I further certify that I caused a true and correct copy to be sent via United States Mail, first class, and postage prepaid addressed top the pro se Plaintiff-Appellant:

Michael Gibson Muir
19 Inglewood Lane
Bloomington, Illinois 61704


   /s/ KIMBERLY A. KLEIN
*Assistant United States Attorney*